IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SANDRA ROOS, *et al.*,　　　　　　*

　　　　Plaintiffs,　　　　　　*
　　　　　　　　　　　　　　　　　　Civil Action No. RDB-18-3970
　　　　v.　　　　　　　　　*

SETERUS, INC., *et. al.*,　　　　*

　　　　Defendants.　　　　　*

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

## MEMORANDUM OPINION

Plaintiffs, Sandra and Donald Roos ("the Roos" or "Plaintiffs") bring a six-count Complaint against Seterus, Inc. ("Seterus") and the Federal National Mortgage Association ("Fannie Mae") (collectively, "Defendants") related to a mortgage loan on a property in Ellicott City, Maryland. (Compl., ECF No. 1-2.) Plaintiffs allege violations by Defendants of the Maryland Consumer Debt Collection Practices Act ("MCDCA"), Md. Code Ann., Com. Law § 14-201, *et seq.*; the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-101 *et seq.*; the Maryland Mortgage Fraud Protection Act ("MMFPA"), Md. Code Ann., Real Prop. §§ 7-401, *et. seq.*; Maryland's prohibition against usury, Md. Code Ann., Com. Law § 12-114; the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, 12 C.F.R. §§ 1024.35 and 1024.36; and request a declaratory judgment pursuant to Md. Code Ann., Cts. & Jud. Proc. § 3-406. (*Id.*) The Roos filed their complaint in the Circuit Court for Baltimore City, Maryland on October 19, 2018. (*Id.*) Defendants removed the case to this

Court on December 26, 2018 based on diversity[1] and federal question[2] jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1367, 1441, and 1446.

Now pending before this Court is Defendants' Motion to Dismiss (ECF No. 4) and Plaintiffs' Motion for Leave to File an Amended & Supplemental Complaint (ECF No. 10). The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, Defendants' dismissal motion shall be GRANTED IN PART and DENIED IN PART, Plaintiffs' motion to amend shall be GRANTED IN PART and DENIED IN PART, and Defendant Federal National Mortgage Association ("Fannie Mae") is DISMISSED WITH PREJUDICE. Specifically, Count IV – Violation of Md. Code Ann., Com. Law § 12-114 ("Usury Law") – against Seterus and Fannie Mae is DISMISSED WITH PREJUDICE because Defendants are not lenders as defined by the statute; Counts I and III against Seterus for violations of MCDCA and MMFPA, respectively, are DISMISSED WITHOUT PREJUDICE; Count VI – Declaratory Judgment is considered to have been withdrawn by Plaintiffs, and it is DISMISSED WITHOUT PREJUDICE as to Seterus and DISMISSED WITH PREJUDICE as to Fannie Mae; Defendants' request to dismiss Counts II and V against Seterus for violations of MCPA and RESPA, respectively, is DENIED; and Plaintiffs shall be allowed to amend their complaint within 30 days if they choose to do so, but Plaintiffs' Proposed Amended Complaint (ECF No. 10-3) is not accepted for filing as their amended complaint.

---

[1]     The Roos are residents of Maryland, Seterus is a citizen of the States of Delaware and North Carolina for purposes of jurisdiction, and Fannie Mae is a District of Columbia corporation. (*See* Not. Removal ¶¶ 13-15.)

[2]     The Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 is a federal statute.

# BACKGROUND

In ruling on a motion to dismiss, the factual allegations in the plaintiff's complaint must be accepted as true and those facts must be construed in the light most favorable to the plaintiff. *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). This Court may also consider documents attached to a motion to dismiss so long as they are "integral to the complaint and authentic." *Thompson v. United States*, RDB-15-2181, 2016 WL 2649931, at *2 n.4 (D. Md. May 10, 2016), *aff'd* 670 F. App'x 781 (4th Cir. 2016) (citation omitted).

On September 2, 2003, Plaintiffs, Sandra and Donald Roos ("the Roos"), entered into a 15-year refinanced[3] mortgage loan arranged by SunTrust Mortgage, Inc. pursuant to the guidelines of the Federal National Mortgage Association ("Fannie Mae") (Compl. at ¶ 19, ECF No. 1-2.) Fannie Mae owns the mortgage loan and is the assignee of the recorded Deed of Trust. (*Id.* at ¶¶ 5, 7, 14, 19.) Fannie Mae retained Seterus, Inc. ("Seterus") to service the mortgage. (*Id.* at ¶ 14.)

On October 6, 2013, Seterus, on behalf of Fannie Mae, offered the Roos a trial modification of the Roos' loan and later a permanent modification which the Roos accepted. (*Id.* at ¶ 21.) Beginning July 1, 2015, Seterus began imposing property inspection fees on the Roos' account. (*Id.* at ¶ 25.) The Roos allege that they reside in the property and have made payments pursuant to the loan modification agreement. (*Id.* at ¶¶ 20, 22.) On June 30, 2016, Seterus, through its agent BWW Law Group, LLC ("BWW Law Group"), issued multiple

---

[3] The Roos initially purchased the property in April 1986. (Compl. ¶ 19, ECF No. 1-2; Mot. Ex. 1, ECF No. 4-2.)

Notices of Intent to Foreclose on the Roos.  (*Id.* at ¶ 31.)  The Roos then contacted BWW Law Group and made several subsequent payments to Seterus.  (*Id.* at ¶ 33.)  Following this, the Roos had a dispute with Seterus and its agent, Lereta, as to the proper application of taxes and tax credits related to the mortgage.  (*Id.* at ¶¶ 34-36.)  Between August 23, 2016 and February 27, 2018, the Roos spoke with Seterus' and Lereta's representatives multiple times concerning taxes, credits applied, and escrow analysis of their mortgage account.  (*Id.*)

On April 19, 2018, the Roos, pursuant to 12 U.S.C. § 2605, requested a reasonable investigation through a Qualified Written Request ("QWR I") of their account related to these disputes with Seterus.  (*Id.* at ¶ 38.)  Dissatisfied with the response by Seterus to QWR I, the Roos sent another qualified written request ("QWR II") on May 30, 2018.  (*Id.* at ¶ 41.)  Dissatisfied with the response to QWR II, the Roos filed a complaint in the Circuit Court for Baltimore City, Maryland on October 19, 2018, pleading six causes of action:

- Count I – Violation of Maryland Consumer Debt Collection Practices Act, Md. Code Ann., Com. Law § 14-201, *et seq.* ("MCDCA") – against Seterus

- Count II – Violation of Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-101 *et seq.* ("MCPA") – against Seterus

- Count III – Violation of Maryland Mortgage Fraud Protection Act, Md. Code Ann., Real Prop. §§ 7-401, *et. seq.* ("MMFPA") – against Seterus

- Count IV – Violation of Md. Code Ann., Com. Law § 12-114 ("Usury Law") – against Seterus and Fannie Mae

- Count V – Violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605, 12 C.F.R. §§ 1024.35 and 1024.36 ("RESPA") – against Seterus[4]

---

[4]     Although not specifically stated, the allegations under this Count appear to be only against Seterus. (*See* Compl. ¶¶ 95-99, ECF No. 1-2.)

- Count VI – Declaratory Judgment, Md. Code Ann., Cts. & Jud. Proc. § 3-406 – against Seterus and Fannie Mae[5]

(Compl., ECF No. 1-2.)

On December 26, 2018, Defendants Seterus and Fannie Mae removed the case to this Court on the basis of diversity and federal question jurisdiction. (ECF No. 1.) Defendants also filed the pending motion to dismiss. (Mot., ECF No. 4.) The motion is now ripe for decision. On May 1, 2019, the Roos filed the pending Motion for Leave to File an Amended & Supplemental Complaint, which Defendants oppose. (*See* ECF Nos. 10, 11.) For the reasons that follow, Defendants' dismissal motion shall be GRANTED IN PART and DENIED IN PART, Plaintiffs' motion to amend shall be GRANTED IN PART and DENIED IN PART, and Defendant Federal National Mortgage Association ("Fannie Mae") is DISMISSED WITH PREJUDICE. Specifically, Count IV – Violation of Md. Code Ann., Com. Law § 12-114 ("Usury Law") – against Seterus and Fannie Mae is DISMISSED WITH PREJUDICE because Defendants are not lenders as defined by the statute; Counts I and III against Seterus for violations of MCDCA and MMFPA, respectively, are DISMISSED WITHOUT PREJUDICE; Count VI – Declaratory Judgment is considered to have been withdrawn by Plaintiffs, and it is DISMISSED WITHOUT PREJUDICE as to Seterus and DISMISSED WITH PREJUDICE as to Fannie Mae; Defendants' request to dismiss Counts II and V against Seterus for violations of MCPA and RESPA, respectively, is DENIED; and Plaintiffs shall be allowed to amend their complaint within 30 days if they choose to do so,

---

[5] In their response to Defendants' dismissal motion, Plaintiffs essentially withdraw Count VI, asking this Court to dismiss it without prejudice. (Pl.'s Resp. 32 n. 20, ECF No. 5.)

but Plaintiffs' Proposed Amended Complaint (ECF No. 10-3) is not accepted for filing as their amended complaint.

## STANDARD OF REVIEW

### I. Motion to Dismiss

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). The United States Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks

omitted)). Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679.

Rule 9(b) of the Federal Rules of Civil Procedure requires that "the circumstances constituting fraud be stated with particularity." Fed. R. Civ. P. 9(b). The rule "does not require the elucidation of every detail of the alleged fraud, but does require more than a bare assertion that such a cause of action exists." *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1074 (D. Md. 1991). To satisfy the rule, a plaintiff must "identify with some precision the date, place and time of active misrepresentations or the circumstances of active concealments." *Johnson v. Wheeler*, 492 F. Supp. 2d 492, 509 (D. Md. 2007). As the United States Court of Appeals for the Fourth Circuit stated in *United States ex rel. Nathan v. Takeda Pharm. N.A., Inc.*, 707 F.3d 451 (4th Cir. 2013), the aims of Rule 9(b) are to provide notice to defendants of their alleged misconduct, prevent frivolous suits, eliminate fraud actions where all the facts are learned after discovery, and protect defendants from harm to their goodwill and reputation. 707 F.3d at 456 (citation omitted).

## II.    Motion to Amend

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to file an amended complaint "shall be freely given when justice so requires." This "liberal rule" reinforces the "federal policy in favor of resolving cases on their merits instead of disposing them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006).  As noted by the United States Court of Appeals for the Fourth Circuit, Rule 15(a) ensures that the "plaintiff [is] given every opportunity to cure a formal defect in his pleading." *Ostrzenski v. Seigel*, 177 F.3d 245,

252–53 (4th Cir.1999) (quoting 5A Charles Allen Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (2d ed.1990)).

The "liberal rule" of Rule 15(a) is not absolute. A court may deny leave to file an amended complaint when the amendment "would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir.1986) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962). An amendment is futile if its claims cannot survive a motion to dismiss. *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995). Prejudice is analyzed with reference to the "nature of the amendment and the timing," as the "further the case progresse[s] before judgment [is] entered, the more likely it is that the amendment will prejudice the defendant or that a court will find bad faith on the plaintiff's part." *Laber*, 438 F.3d at 427.

## ANALYSIS

As an initial matter, in their response to Defendants' motion, Plaintiffs note that they originally filed their claim for declaratory relief under the State Declaratory Judgment Act, and they ask this Court to dismiss their declaratory judgment claims without prejudice. (Pl.'s Resp. 32 n. 20, ECF No. 5.) Accordingly, this Court shall DISMISS Count VI WITHOUT PREJUDICE as to Seterus. However, as discussed below, Count IV, the only other claim alleged against Fannie Mae will be dismissed with prejudice. Therefore, Count VI as alleged against Fannie Mae shall be DISMISSED WITH PREJUDICE.

## I. Inspection Fees

As a threshold matter to discussion of the remaining causes of action, Defendants contend that all the remaining counts are premised on an alleged violation of Md. Code Ann.,

Com. Law § 12-121 for illegally imposing property inspection fees. (Mot. Mem. 5, ECF No. 4-1.) Defendants contend that although not expressly referenced except in Count IV, the claims all stem from the alleged violation of the statute. (*Id.* at 5 n. 6 (citing Compl. ¶¶ 55-61, 69, 71, 82, 96, 98, 104-105, ECF No. 1-2).) Defendants assert three reasons why these claims fail: (1) the Deed of Trust specifically authorized inspection fees; (2) Section 12-121 is inapplicable to Defendants; and (3) Section 12-121 does not have a blanket prohibition on the imposition of inspection fees. (*Id.*; *see also* Reply 2, ECF No. 9.) Each shall be addressed in turn.

### A.    Inspection Fees Were Authorized Under the Deed of Trust

Defendants provide the Deed of Trust (Ex. 2, ECF No. 4-3) and the Assignment granted to Fannie Mae (Ex. 3, ECF No. 4-4) to demonstrate that the Roos explicitly authorized the lender or its agent to inspect the property and to charge fees for inspection. (Mot. Mem. 6, ECF No. 4-1 (citing Exs. 2, 3).) Plaintiffs do not question these documents but argue that regardless, the Defendants may not impose or collect property inspection fees because they are barred by Maryland Law. (*See* Pl.'s Resp. 5-8, *see also* Compl. ¶ 20, ECF No. 1-2.) Specifically, Plaintiffs cite Md. Code Ann., Com. Law § 12-121, which states:

> (a) In this section, the term "lender's inspection fee" means a fee imposed by a lender to pay for a visual inspection of real property.
>
> (b) **Except as provided in subsection (c)** of this section, **a lender may not impose a lender's inspection fee in connection with a loan secured by residential real property**.
>
> (c) A lender's inspection fee may be charged if the inspection is needed to ascertain completion of:
>
>> (1) Construction of a new home; or

(2) Repairs, alterations, or other work required by the lender.

(d) This section does not apply to an appraisal of the value of real property by a lender or to fees imposed in connection with an appraisal.

(emphasis added). Plaintiffs further cite *Taylor v. Friedman*, 689 A.2d 59 (1997), in which the Maryland Court of Appeals reviewed the legislative history for Com. Law § 12-121 and concluded that § 12-121 was not limited to closing costs, but rather is a "continuing prohibition throughout the life of the loan." *Id.* at 64.

Finally, Plaintiffs add that the Maryland Office of the Commissioner of Financial Regulation ("OCFR"), which is the agency charged with enforcement of Maryland's mortgage lender laws, issued an advisory stating that *Taylor* "applies to circumstances where a servicer orders a visual inspection of property following default on the terms of a mortgage." (Pl.'s Resp. 10, ECF No. 5 (quoting the OCFR Advisory, Ex. 1, ECF No. 5-1.)

Plaintiffs arguments fail. The plain language of the statute, which is clear and unambiguous, states that "a **lender** may not impose a lender's inspection fee . . . ." Com. Law § 12-121 (emphasis added). Com. Law § 12-101(f) (2018) contains the definition: "'Lender' means a person who makes a loan under this subtitle."[6] As this Court stated just a few days ago:

> In *Taylor*, the Maryland Court of Appeals considered whether the Maryland Court of Special Appeals erred when it concluded that § 12-121's prohibition against inspection fees applied only to closing costs. In the course of its discussion, the Court used the collective term "Lender" to describe the

---

[6]    The updated definition in January 2019 defines lender as "a licensee or a person who makes a loan subject to this subtitle." Com. Law § 12-101(f) (2019). Licensee "means a person that is required to be licensed to make loans subject to this subtitle, regardless of whether the person is actually licensed." *Id.* at § 12-101(g).

Respondents, various entities which had held the note secured by the deed of trust on the residence at issue in the case. This term embraced the holder of the note secured by the deed of trust . . . ; the substitute trustees who were designated during foreclosure proceedings; and [the acquirer of the note]. Ultimately, the Court of Appeals concluded that § 12-121 was not limited to closing costs, but rather is a "continuing prohibition throughout the life of the loan." *Id.* at 582, 689 A.2d 59.

> *Taylor* does not stand for the proposition that assignees may be held liable under § 12-101(f). Although the Court described the various note holders in the case as "Lender" and appeared to subject each Respondent to the same analysis, it did not hold that each individual "lender" in the case could be held liable. Put simply, the Court never addressed whether the inspection fee statute applied to [the defendant] or assignees.

*Suazo v. U.S. Bank Trust, NA*, Civil Action No. RDB-18-1451, 2019 WL 4673450, at *10 (D. Md. Sep. 25, 2019). The OCFR Advisory correctly states that "lenders" may not impose inspection fees, but to the extent that it suggests that *Taylor* stands for the proposition that servicers or assignees may be held liable under § 12-121, this Court is not persuaded.

Therefore, Defendants are prohibited from imposing or collecting inspection fees only if they fit within the statute's definition of "lender."

## B. Defendants are Not Lenders Under Section 12-121

A "lender" under the statute is defined as "a person who makes a loan under this subtitle." Com. Law § 12-101(f) (2018). Neither Fannie Mae or Seterus can be considered a lender under this definition. The Deed of Trust refers to SunTrust as the "lender." (Mot. Ex. 2, ECF No. 4-3.) Fannie Mae became the assignee of the Mortgage. (Mot. Ex. 3, ECF No. 4-4.) According to Plaintiffs, Fannie Mae retained Seterus to service the mortgage. (Compl. ¶ 14, ECF No. 1-2.) The Roos do not allege that either Fannie Mae or Seterus made the loan

to them nor that either Defendant make loans in general.[7] Defendants cite an almost identical case before the Montgomery County Circuit Court, *Kemp v. Seterus, Inc.*, No. 441428-V (Mont. Co. Cir. Ct. Oct. 19, 2018), which roundly rejected the argument that Seterus and Fannie Mae were "lenders" under this statute. (*See* Reply Ex. A 6-9, ECF No. 9-1.) The case involves the same Defendants and analyzes the same property inspection fees issues. This Court finds the *Kemp* Court's legal analysis of the statutory construction well reasoned and agrees that Defendants do not fit under the statute's definition of a lender.

Accordingly, this Court concludes that Defendants are not lenders under Com. Law § 12-121.

## C. Section 12-121 is Not a Blanket Ban Against Inspection Fees

Com. Law. § 12-121 is not a blanket ban against inspection fees. Rather, such fees may be assessed by a lender "if the inspection is needed to ascertain completion of: (1) Construction of a new home; or (2) Repairs, alterations, or other work required by the lender." *Id.* § 12-121(c). Further, Section 12-121 does not ban non-lenders from charging fees for inspecting property. Defendants, as discussed above, are not lenders and were authorized by Plaintiffs to impose inspection fees.

Additionally, Plaintiffs fail to allege how the fees that were charged, when combined with the interest rate on their mortgage loan, actually exceeds the maximum allowed by Maryland law, so they fail to state a claim for usury under Count IV. Therefore, Count IV shall be DISMISSED WITH PREJUDICE. To the extent that the remaining counts rely on

---

[7] Under federal law, Fannie Mae is prohibited from originating loans. *Affordable Communities of Missouri v. Fannie Mae,* 714 F.3d 1069, 1074 (8th Cir. 2013) (citing 12 U.S.C. § 1719(a)(2)(B)(2010)).

a violation of Section 12-121, they will also fail. However, each of the remaining counts (Counts I, II, III, and V) shall be addressed in turn.

## II.    Count I – Maryland Consumer Debt Collection Act

The Maryland Consumer Debt Collection Act ("MCDCA") prohibits a debt collector from "[c]laim[ing], attempt[ing], or threaten[ing] to enforce a right with knowledge that the right does not exist." Md. Code Ann., Com. Law §§ 14-202(8). To succeed on an MCDCA claim, a plaintiff "'must set forth factual allegations tending to establish two elements: (1) that Defendants did not possess the right to collect the amount of debt sought; and (2) that Defendants attempted to collect the debt knowing that they lacked the right to do so.'" *Healy v. BWW Law Group, LLC*, No. PWG-15-3688, 2017 WL 281997, at *5 (D. Md. Jan. 23, 2017) (quoting *Lewis v. McCabe Weisberg & Conway*, No. DKC 13-1561, 2014 WL 3845833, at *6 (D. Md. Aug. 4, 2014)).

Under Count I, the Roos allege that Seterus engaged in the business of collecting consumer debts secured by real property, and claimed that it was "entitled to assess, charge, and collect from the Plaintiffs property inspection fees or preservation fees related to Plaintiffs' secured mortgage loan," and "Maryland law does not permit Seterus's assessment and collection of property inspection fees." (Compl. ¶¶ 54-55, 57, 60, ECF No. 1-2.) The Roos also allege that Seterus claimed that it was "entitled to assess, charge, and collect from the Plaintiffs through the improperly threatened foreclosure created by Seterus' fictional default," and it "knowingly claimed the right to fees and other sums not due from Plaintiffs since it had retained an unlicensed sub-servicer . . . ." (*Id.* at ¶¶ 56, 58.) The Roos add that

"Seterus' actions in violation of the MCDCA also constitute a *per se* violation of the MCPA pursuant to Com. Law § 13-301 (14(iii))." (*Id.* at ¶ 62.)

As stated above, to the extent that Plaintiffs' allegations relate to the collection of property inspection fees, this claim fails. Plaintiffs also refer to an improperly threatened foreclosure and other fees related to an unlicensed sub-servicer. However, Plaintiffs have failed to allege facts that Seterus acted with knowledge that the debt it was collecting was invalid. "Maryland Courts have consistently interpreted the MCDCA to require plaintiffs to allege that defendants acted with knowledge that the 'debt was invalid, or acted with reckless disregard as to its validity.'" *Lembach v. Bierman*, Nos. 12-1723, 12-1746, 528 F. App'x 297 (4th Cir. 2013) (quoting *Shah v. Collecto, Inc.*, No. DCK 2004-4059, 2005 WL 2216242, at *11 (D. Md. Sept. 12, 2005)). Merely reciting the statutory language is insufficient, and Plaintiffs have made no allegations regarding statements or actions taken by Seterus that would indicate that it knew its accounting was inaccurate or that it was attempting to collect despite this knowledge. Therefore, Plaintiffs have failed to allege a plausible cause of action under the MCDCA.

Further, this Court has required an MCDCA claim to satisfy a heightened pleading standard. *Amenu-El v. Select Portfolio Servs.*, Civil Action No. RDB-17-2008, 2017 WL 4404428, at *4 (D. Md. Oct. 4, 2017) (citing *Adle-Watts v. Roundpoint Mortgage Servicing Corp.*, No. CCB-16-400, 2016 WL 3743054, at *5 (D. Md. July 13, 2016), and *Healy*, 2017 WL 281997, at *2)). Even if this Court were to determine that the plausible pleading standard was satisfied, Plaintiffs would certainly not satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b). Accordingly, Count I shall be DISMISSED WITHOUT PREJUDICE.

### III. Count II – Maryland Consumer Protection Act

The Maryland Consumer Protection Act ("MCPA") prohibits "unfair or deceptive trade practices." Md. Code Ann., Com. Law § 13-301. To bring an MCPA claim, a consumer must allege "(1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury." *Stewart v. Bierman*, 859 F. Supp. 2d. 754, 768 (D. Md. 2012) (citing *Lloyd v. General Motors Corp.*, 397 Md. 108, 143, 916 A.2d 257 (2007)). Because an MCPA claim sounds in fraud, it must be plead with particularity. *Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 465 (D. Md. 2013); *Robinson v. Nationstar Mortgage LLC*, No. TDC-14-3667, 2015 WL 4994491, at *4 (D. Md. Aug. 19, 2015) (citing *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013)).

The Roos allege that Seterus failed "to timely and accurately respond to Plaintiffs' lawful efforts to mitigate their situation," demanded "sums not legally or contractually due," referred them to foreclosure "before it had a right to do so" under the law, and "failed to conduct any reasonable investigation of Plaintiffs' disputes whatsoever." (Compl. ¶ 69, ECF No. 1-2.) Detailed allegations regarding Seterus' specific actions on specific dates support their claims. (*See, e.g.*, *id.* at ¶ 31 (alleging that "[o]n June 30, 2016, Seterus caused its authorized agent BWW Law Group, LLC to issue and send multiple Notices of Intent to Foreclose related to the Plaintiffs" and then described the specific "false and misleading information"); ¶ 26 (alleging that Seterus engaged a vendor to put up a false sign indicating that their home was abandoned). The Roos allege that they "reasonably relied upon" Seterus' actions as demonstrated by their continued payments and their communications as well as their attempts to mitigate the situation. (*Id.* at ¶ 71.) The Roos also alleged damages. (*Id.* at ¶ 73.)

Excluding the Roos' reliance on inspection fees being unlawful, and the lack of a plausible MCDCA claim, the Roos have alleged the elements of this claim with sufficient particularity, including times, places, and contexts of false representations. Count II shall survive the Defendants' dismissal motion.

## IV.     Count III – Maryland Mortgage Fraud Protection Act

The Maryland Mortgage Fraud Protection Act ("MMFPA") broadly states that "[a] person may not commit mortgage fraud." Md. Code. Ann., Real Prop. § 7-402. As this is also a claim sounding in fraud, a plaintiff must allege a MMFPA claim with particularity. *Moss v. Ditech Fin., LLC*, No. PWG-15-2065, 2016 WL 4077719, at *2 (D. Md. Aug. 1, 2016).

The Roos allege that they "are homeowners in the Mortgage Lending Process as defined by the MMFPA since the actions in dispute in this lawsuit involve the negotiations and servicing of the Loan." (Compl. ¶ 80, ECF No. 1-2.) The MMFPA prohibits mortgage fraud during the mortgage lending process, which includes servicing the loan. *See* Real Prop. § 7-401(e)(2) (defining the "mortgage lending process" to include "(i) [t]he solicitation, application, origination, negotiation, servicing, underwriting, signing, closing, and funding of a mortgage loan; and (ii) the notarizing of any document in connection with a mortgage loan"). Under the statute, mortgage fraud is defined, as relevant to this case:

> "Mortgage fraud" means any action by a person made with the intent to defraud that involves:
>
> (1) Knowingly making any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process;

(2) Knowingly creating or producing a document for use during the mortgage lending process that contains a deliberate misstatement, misrepresentation, or omission with the intent that the document containing the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process;

(3) Knowingly using or facilitating the use of any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process;

(4) Receiving any proceeds or any other funds in connection with a mortgage closing that the person knows resulted from a violation of item (1), (2), or (3) of this subsection;

(5) Conspiring to violate any of the provisions of item (1), (2), (3), or (4) of this subsection; or

§ 7-401(d). "The MMFPA does not define the terms "misrepresentation" or "omission," as used in the statute. However, courts addressing MMFPA claims have indicated . . . that in order to state a MMFPA claim, plaintiffs must plead the elements of a common law fraud claim." *Galante v. Ocwen Loan Servicing LLC*, Civil Action No. ELH–13–1939, 2014 WL 3616354, at *28 (D. Md. Jul. 18, 2014). To prevail on a fraud claim in Maryland, a plaintiff must show:

(1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Id.* at *22 (quoting *Moscarillo v. Prof'l Risk Mgmt. Servs., Inc.*, 398 Md. 529, 544, 921 A.2d 245, 254 (2007)).

Defendants contend that Plaintiffs have failed to plead the elements of common law fraud, specifically, Plaintiffs fail to plead that Defendants had the intent to defraud, which requires "factual allegations tantamount to alleging deceit." (Mot. Mem. 11, ECF No. 9 (citing *In re Blackston*, 557 B.R. 858, 873 (D. Md. 2016)).) Defendants add that Plaintiffs fail to establish reliance to their detriment and a compensable injury. As discussed above under the MCDCA claim, Plaintiffs fail to provide factual allegations that Seterus acted with an intent to defraud. In their response to Defendants' motion, Plaintiffs simply point back to their response on the MCDCA claim, which this Court found insufficient as discussed above. (*See* Pl.'s Resp. 23, ECF No. 5.) Accordingly, Count III shall be DISMISSED WITHOUT PREJUDICE.

## V. Count V – Real Estate Settlement Procedures Act

Under Count V, Plaintiffs claim that Seterus received Plaintiffs' Notices of Error and Requests for Information (generally referred to as Qualified Written Requests ("QWR")) and failed to properly respond, provide the requested information, perform any reasonable investigation, or correct its errors. (Compl. ¶¶ 95-99, ECF No. 1-2.) As such, Plaintiffs allege that Seterus violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, 12 C.F.R. § 1024.36, and 12 C.F.R. § 1024.35. (*Id.*)

"Congress enacted RESPA in order 'to insure that consumers . . . are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices . . . .'" *Galante*, 2014 WL 3616354, at *32 (quoting 12 U.S.C. § 2601). In *Galante*, Judge Hollander explains the provisions at issue:

> Among other provisions, RESPA requires a mortgage servicer to respond to a borrower's "qualified written request" ("QWR"). *See* 12 U.S.C. § 2605(e)(1)(A), (B). A QWR consists of written correspondence from a borrower that identifies the borrower and account at issue, and "includes a statement of the reasons for the belief of the borrower . . . that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). Within thirty days after receipt of a QWR, a servicer must (1) correct the error identified by the borrower and notify the borrower of such correction; or (2) investigate the matters addressed by the request, and respond to the borrower in writing, explaining "the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer," or provide the "information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer." *Id.* § 2605(e)(2). A servicer's violation of this provision entitles a borrower to recover actual damages, as well as statutory damages in cases showing a "pattern or practice of noncompliance." *Id.* § 2605(f).

*Id.* at 32-33.

To prevail on this RESPA theory, a plaintiff "'must demonstrate that the defendant was responsible for the servicing of the plaintiff's loan; the defendant received a valid Qualified Request from the plaintiff that relates to the servicing of a mortgage loan; the defendant failed to respond adequately; and the plaintiff is entitled to actual or statutory damages.'" *Lindsay v. Rushmore Loan Mgt., Servs., LLC*, No. PWG-15-1031, 2017 WL 1230833, at *8 (D. Md. Apr. 4, 2017) (quoting *Martins v. Wells Fargo Bank, N.A.*, No. CCB-16-1070, 2016 WL 7104813, at *3 (D. Md. Dec. 6, 2016)).

Plaintiffs describe in reasonable detail, with dates, their telephonic and written correspondence to Seterus requesting that Seterus and its agent, Lereta, conduct an investigation into the conflicting escrow statements and tax overpayments. (Compl. ¶¶ 35-48,

ECF No. 1-2.) They describe QWR I and QWR II in factual detail, including that Seterus did not respond to certain inquiries, and they include allegations that they sustained actual damages in legal fees and costs to prepare and mail the QWRs. (*Id.*) Plaintiffs have plausibly alleged a violation of RESPA. Count V shall survive the Defendants' dismissal motion.

## VI. Motion to Amend

Plaintiffs move for leave to file an amended complaint pursuant to Fed. R. Civ. P. 15(a)(2), (d). (Mot. Amend, ECF No. 10.) Plaintiffs advise this Court that since the commencement of this action, Seterus has ceased its operations and its mortgaging servicing business has been transferred or sold to Nationstar Mortgage LLC d/b/a Mr. Cooper ("Nationstar"). (*Id.*) They also note that no scheduling order has been issued and no discovery has occurred. (*Id.*) Plaintiffs provide a Proposed Amended Complaint (ECF No. 10-3), which they state contains additional background facts and claims related to Nationstar. (*Id.*)

Defendants object to the filing of an amended complaint because they contend it would be futile. (Defs.' Resp. 1-2, ECF No. 11.) Defendants' objection appears to be entirely based on their argument that if they are not lenders, there are no viable claims. (*Id.*) As discussed above, although this Court concluded that Defendants are not lenders, and claims and allegations relying only on Plaintiffs' inspection fees theory fail, some claims remain based on Plaintiffs' original complaint. Therefore, amendment is not futile. However, given this Court's decision on Defendants' dismissal motion, the dismissal with prejudice of Count IV, and the dismissal of Fannie Mae as a Defendant, the Proposed Amended Complaint (ECF No. 10-3) shall not be accepted for filing. Rather, this Court GRANTS Plaintiffs' Motion for

Leave to File an Amended & Supplemental Complaint and shall allow 30 days for Plaintiffs to

file an amended complaint should they choose to do so.

## CONCLUSION

For the foregoing reasons:

1.  Defendants' Motion to Dismiss (ECF No. 4) is GRANTED IN PART and DENIED IN PART.

    a.  Count I – Violation of Maryland Consumer Debt Collection Practices Act, Md. Code Ann., Com. Law § 14-201, et seq. ("MCDCA") – against Seterus is DISMISSED WITHOUT PREJUDICE.

    b.  Defendants' request to dismiss Count II – Violation of Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-101 *et seq.* ("MCPA") – against Seterus is DENIED.

    c.  Count III – Violation of Maryland Mortgage Fraud Protection Act, Md. Code Ann., Real Prop. §§ 7-401, et. seq. ("MMFPA") – against Seterus is DISMISSED WITHOUT PREJUDICE.

    d.  Count IV – Violation of Md. Code Ann., Com. Law § 12-114 ("Usury Law") – against Seterus and Fannie Mae is DISMISSED WITH PREJUDICE.

    e.  Defendants' request to dismiss Count V – Violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605, 12 C.F.R. §§ 1024.35 and 1024.36 ("RESPA") – against Seterus is DENIED.

    f.  Count VI – Declaratory Judgment, Md. Code Ann., Cts. & Jud. Proc. § 3-406 – against Seterus and Fannie Mae is DISMISSED WITHOUT PREJUDICE as to Seterus and DISMISSED WITH PREJUDICE as to Fannie Mae.

    g.  Defendant Federal National Mortgage Association ("Fannie Mae") is DISMISSED WITH PREJUDICE.

2.  Plaintiffs' Motion for Leave to File an Amended & Supplemental Complaint (ECF No. 10) is GRANTED IN PART and DENIED IN PART.

    a.  Plaintiffs are GRANTED leave to amend their Complaint within 30 days of the date of this decision.

        b.     This Court does not accept Plaintiffs' Proposed Amended Complaint (ECF No. 10-3) for filing as an amended complaint.

3.     A separate Order follows.

Date: September 30, 2019.

_____/s/_____
Richard D. Bennett
United States District Judge