## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

**SANDRA ROOS,** *et al.,*

       **Plaintiffs**

v.                                                            Case No:  1:18-cv-03970-RDB

**SETERUS, INC.**
And
**NATIONSTAR MORTGAGE LLC as the**
**successor in interest to Seterus Inc. and**                **JURY TRIAL DEMAND**
**individually**
8950 Cypress Walters Blvd.
Coppell, TX 75019
**SERVE ON:**
CSC-Lawyers Incorporating Service,
Resident Agent
7 St. Paul Street, Suite 820
Baltimore, MD

       **Defendants**

### AMENDED COMPLAINT[1]

---

[1]     By prior Order of the Court (ECF. 15), Plaintiffs were granted leave of the Court to file this Amended Complaint which is not intended to reassert any of the claims originally claimed by the Plaintiffs which were dismissed with prejudice and is intended only to add additional and supplemental facts related to those claims that were not dismissed with prejudice.  For review purposes, if necessary at a later stage of these proceedings, Plaintiffs' preserve by this reference all rights at all remaining stages to those claims and parties dismissed by Court with prejudice (ECF. 15) which are not waived by this amendment by the Plaintiffs.

Plaintiffs Donald and Sandra Roos ("Mr. & Mrs. Roos" or "Plaintiffs"), through their undersigned counsel file this Amended Complaint ("AC") against Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper ("Nationstar") as the successor in interest to Defendant Seterus, Inc. ("Seterus")(collectively "Defendants")[2,3] and say in support:

## I.    Introduction

1.    Following the commencement of this action, Seterus has disclosed publicly that it has dissolved and Nationstar has acquired its mortgage servicing business including the mortgage servicing rights of the Plaintiffs' loan subject to this action.   Upon information and belief, based on Seterus' and Nationstar's representations in the matter of *Martino v. Bank of America, NA* in the United States District Court for the District of Connecticut (Case No. 3:17-cv-01326-KAD), Nationstar has assumed all of Seterus' liabilities as well as its mortgage servicing rights.

2.    Seterus and Nationstar knowingly and improperly serviced and attempted to collect upon the mortgage loan account of Mr. & Mrs. Roos in a manner that neither were permitted as part of their regular and routine mortgage servicing practices in the State of Maryland on behalf of Fannie Mae.

---

[2]    By prior Court Order (ECF. 15) Defendant Federal National Mortgage Association ("Fannie Mae") was dismissed with prejudice from this action.   No claims asserted herein are asserted against Fannie Mae but Fannie Mae may be referenced from time to time as a non-party.

[3]    Seterus is continued to be named as a Defendant here pursuant to FIN. INST. § 11-508(b)(3)(vii) to ensure that Plaintiff's claim is disclosed to surety bond issued to Seterus which is held by the Commissioner of Financial Regulation as the obligee on Plaintiff's behalf. *See e.g.* FIN. INST. § 11-508(b)(1)("The bond shall run to the Commissioner, as obligee, for the benefit of…Any mortgage loan borrower who has been damaged by a violation committed by a licensee of any law or regulation governing the activities of mortgage lenders").

3.     In addition, Seterus under its express authority granted to it by Fannie Mae also has botched its FIN. INST. § 11-501(n)(2) servicing of Mr. & Mrs. Roos by utilizing an unlicensed sub-servicer, Lereta LLC ("Lereta"), to perform certain portion of its FIN. INST. § 11-501 mortgage servicing duties on behalf of Fannie Mae when it acted as the mortgage servicer of the Plaintiffs' loan.   Specifically, Seterus and Lereta improperly applied Mr. & Mrs. Roos' property tax credits and have therefore over-collected and over-paid the actual taxes due from Mr. & Mrs. Roos and failed to credit the refunds it received from the over-payments back to Mr. & Mrs. Roos' mortgage account.  These accounting errors infected the Plaintiffs' loan and the application of their payments by diverting portions of the payments made to sums not lawfully owned by the Plaintiffs.   Nationstar has knowledge that this accounting data it acquired from Seterus, related the Plaintiffs' loan and the loans of others, by electronic transfer contains material errors and is unrealiable but it has asserted the right to claim the infected data is true and correct and the Plaintiffs owe sums that are not lawfully owed.

4.     Seterus retained Lereta to engage in whole or in part in the business of collecting or otherwise receiving payments on Plaintiffs' mortgage loan for distribution to others—in this manner the tax and other escrow portion of Mr. & Mrs. Roos' monthly payments.  FIN. INST. § 11-501(n)(1).  Seterus and Lereta's unfair and deceptive mortgage servicing has therefore infected Mr. & Mrs. Roos' mortgage account as discussed *infra* and caused them certain damages and losses manifested by worry, frustration, and anger in that Seterus and Nationstar cannot not accurately calculate their escrow account therefore demands sums in excess of what are actually due and owing.

5.     To disguise its improper servicing of the Roos' mortgage account, Seterus concealed its unfair and deceptive and otherwise wrongful activities described herein by: (i) failing to send

3

Mr. & Mrs. Roos their monthly or periodic statements that it was required to send pursuant to COM. LAW § 12-106(c). Seterus also disguised and concealed its unfair and deceptive and otherwise wrongful activities described herein in violation of Md. Code Regs. 09.03.06.13(B) to provide accounting statements upon request that sets forth all charges on the borrowers' loans; in response to Mr. & Mrs. Roos' specific inquiry for such information Seterus concealed and omitted any disclosure the fees and charges to their mortgage and management of the Roos' escrow account by Seterus.

6.      Seterus is also required by Federal Law to accurately apply Mr. & Mrs. Roos' periodic payments. 12 C.F.R. § 1026.36(c)(1)(i). Seterus, as a licensed, Maryland mortgage servicer/lender, also agreed to "a duty of good faith and fair dealing in communications, transactions, and course of dealings with a borrower in connection with the advertisement, solicitation, making, servicing, purchase, or sale of any mortgage loan." MD. CODE REGS. 09.03.06.20. However, as a pattern and practice, Seterus collects periodic payments from Mr. & Mrs. Roos' but does not apply the entire sums paid to or refunded to their mortgage accounts and instead diverts portions of the sums paid and collected by it for other, unknown purposes.

7.      Seterus has proximately caused other damages and losses by imposing and collecting sums from Mr. & Mrs. Roos which are not lawfully due or allowed. Also, Seterus was also unjustly enriched and it should not be permitted to retain the benefit of its unfair, deceptive, and abusive mortgage servicing practices without the right to do so. Finally, Mr. & Mrs. Roos are also entitled to statutory damages under Federal and Maryland law. Nationstar is liable for the acts and omissions of Seterus which caused damages and losses to the Plaintiffs. Nationstar's liability is as the successor in interest and its public representations. Nationstar also has

liability to the Plaintiffs for the damages and losses it also caused to the Plaintiffs after it acquired Seterus.

## II. The Parties

8.     Mr. & Mrs. Roos are residents of Ellicott City, Maryland in Howard County.  Their loan subject to these proceedings is a consumer loan. It is a loan primarily for personal, family or household purposes.

9.     Seterus was a wholly-owned subsidiary of Kyanite Services, Inc., which is a wholly owned subsidiary of Pixel Acquisition Corp., which is, in turn, wholly owned by International Business Machines Corporation (NYSE: IBM).   Seterus does business as a mortgage lender/servicer throughout the State of Maryland by the Office of the Commissioner of Financial Regulation ("OCFR") (License No. 19876).   As part of its business, Seterus authorized its agents to conduct collection activities in every Maryland County, including Baltimore City, which include collection by litigation.  According to an Affidavit of Foreign Mergers or Consolidation (stamped March 1, 2019) that is filed with the State Department of Assessments and Taxation, Karen Robb has certified that Nationstar is the successor of Seterus, Inc. by merger or consolidation.

10.     Not named as a Defendant in this Amended Complaint, Fannie Mae is the owner of Mr. & Mrs. Roos' loan. Fannie Mae had retained Seterus, and now has retained Nationstar, to act on its behalf, and pursuant to Seterus' and Nationstar's contract with Fannie Mae, Seterus and Nationstar are required to service Mr. & Mrs. Roos' loan in accordance with Maryland law. As part of their mortgage servicing arrangement, Seterus and Nationstar by contract have agreed to indemnify Fannie Mae for any losses sustained on the loan by Fannie Mae.

11.     Nationstar does business as a mortgage lender/servicer throughout the State of Maryland by the Office of the Commissioner of Financial Regulation ("OCFR") (License No. 7177).  As the successor by merger of Seterus, Nationstar is responsible for the liabilities of Seterus to the Plaintiffs.  *Ramlall v. MobilePro Corp.*, 202 Md. App. 20 (2011).

12.     Not named as a Defendant in this action, Lereta LLC is a Delaware corporation.  As part of its services to Seterus while acting as Seterus' sub-servicer/vendor, Lereta: (i) assumes responsibility for tracking, payment of property taxes, insurance, and the maintenance of Seterus' escrow loans including the Roos' loan; (ii) collects and holds escrow funds of Seterus' escrowed loans including the Roos' loan; (iii) makes payments on behalf of Seterus' escrowed loans, including the Roos' loan to tax authorities and insurance companies, (iii) prepares and sends in the name of Seterus the initial, annual, and short year  disclosure statements to borrowers and the Plaintiffs detailing the alleged sums due related to the borrowers' escrow accounts.  Upon information and belief Nationstar has continued to utilize Lereta for similar services since acquiring the servicing rights to Plaintiffs' loan with knowledge it does not have a legal right to utilize unlicensed vendors/sub-servicers like Lereta under Maryland law.  This belief concerning Nationstar is based on public records that show Leteta continues to manage Plaintiffs' escrow account as discussed *infra*.

## III.     Jurisdiction and Venue

13.     Declaratory and injunctive relief are available pursuant to CTS. & JUD. PROC. §§ 3-401 – 3-415 and 28 U.S.C.A. §§ 2201-2202.

14.     Venue in this Court is proper in that the Defendants transact business within Howard County in relation to Howard County residents as part of their debt collection/mortgage

servicing practices and includes conduct complained of which occurred in Howard County, Maryland.

15.     This Court has jurisdiction of this matter based upon (i) federal question jurisdiction (28 U.S.C. § 1331) and supplemental jurisdiction (28 U.S.C. § 1367(a)).

## IV.     Facts Related to Mr. & Mrs. Roos & Defendants

16.     On September 2, 2003, Mr. & Mrs. Roos entered into a 15-year (refinance) mortgage with a loan arranged by SunTrust Mortgage, Inc. pursuant to the Fannie Mae guidelines ("Roos' Loan").  The Roos' Loan was memorialized into a standard mortgage note and a deed of trust created by Fannie Mae.  The deed of trust is recorded in the land records for Howard County (Book 7574/Page 404).  This transaction also paid off a prior, 30-year loan taken out by Mr. & Mrs. Roos.  All sums used from the Roos' Loan and its predecessor loans were used for personal, consumer purposes related to the Plaintiffs' home and residence located at 5310 Debbie Court in Ellicott City, Maryland (21043)("Roos' Property").

17.     On October 6, 2013, Seterus on behalf of Fannie Mae offered Mr. & Mrs. Roos a trial modification of the Roos' Loan and thereafter offered a permanent modification on February 4, 2014.  Mr. & Mrs. Roos timely accepted the modification ("Roos' Loan Modification").

18.     The Roos' Loan Modification is a standard and uniform document utilized by Fannie Mae for borrowers like Mr. & Mrs. Roos.  In reliance to the modification and the documents governing their loan, Mr. & Mrs. Roos have made payments on their modification through the present on the reasonable belief that Seterus, and now Nationstar, would apply the payments as required under Maryland and Federal law.  No reasonable person would believe that Seterus

or Nationstar would divert a borrowers' payments for some improper purpose not permitted under the law.

19.    Notwithstanding that it had a contractual and legal duty to send Mr. & Mrs. Roos their monthly or periodic statements related to the Roos' Loan pursuant to COM. LAW § 12-106(c) and the Roos' deed of trust (at ¶ 14 & ¶ J), since at least February 2014 through May 1, 2018, Seterus refused to send monthly, periodic statements to Mr. & Mrs. Roos.  Therefore, during this period there was no reasonable way for Mr. & Mrs. Roos to know how Seterus was applying their monthly payments and what fees and charges were being imposed upon or omitted from their mortgage account and even whether such charges were permitted under their loan documents or Maryland law or how it was calculating and managing their escrow account.  As discussed *infra*, this concealment by Seterus caused a pattern of misinformation by omission by Seterus that improperly and deceptively infected Mr. & Mrs. Roos' loan.

20.    To carry-out its property inspections, Seterus engages a vendor, SafeGuard Properties who implements false and deceptive means to illegally interfere in Mr. & Mrs. Roos' mortgage contract by knowingly leaving, as a part of its pattern and practice, deceptive notices on the Roos' home and property designed to create fear and anxiety in Mr. & Mrs. Roos and put them into a false light with their neighbors.  For example, SafeGuard, with the express authority granted to it by Seterus left at the Roos' Property in August 2016:

# IMPORTANT!

We found this property to be vacant/abandoned. This information will be reported to the mortgage holder. The mortgage holder has the right and duty to protect this property. The property may be rekeyed and/or winterized within 3 days. If this property is **NOT VACANT**, please contact Safeguard Properties at **877-340-8482**.

**IIMPORTANTE!** Encontramos que esta propiedad para ser vacío/abandonado. Esta información será informada al poseedor de la hipoteca. El poseedor de la hipoteca tiene el derecho y el deber para proteger esta propiedad. La propiedad puede ser segurada y/o acondicionado para el invierno dentro de 3 días. Si esta propiedad no esta VACIA, por favor ponerse en contacto con Safeguard Properties al **877-340-8482**.

**Code Enforcement & Building Officials:** For any issues at this property please contact Safeguard Properties Code Enforcement Dept. at 800-852-8306, dial 1, then extension 2173 or code.enforcement@safeguardproperties.com          SPI009-0613

21.    The above notice was knowingly false since the Plaintiffs had not abandoned or vacated the Roos' Property in August 2016 or otherwise and SafeGuard and Seterus had no reasonable basis to believe otherwise.  The above notice was designed to use a knowingly fake factual contention to induce fear onto Mr. & Mrs. Roos and it was successful in doing so as demonstrated by the Roos' response to the statement.  Promptly after being handed the notice identified in the above paragraph by SafeGuard's representative Lisa Cozier on August 19, 2016, Mr. Roos called SafeGuard at the number contained in its notice to inform it that Plaintiffs still lived in the Property, and that they were making their mortgage payments and Safeguard's assertion was wrong and worrisome.

22.    Notwithstanding that it had a contractual and legal duty to send Mr. & Mrs. Roos their monthly or periodic statements related to the Roos' Loan pursuant to COM. LAW § 12-106(c) and the Roos' deed of trust (at ¶ 14 & ¶ J) and did not do so, Mr. & Mrs. Roos did utilize Seterus' website to make their monthly payments.

23.    Because of Seterus' failure to perform it contractual and legal obligations to send regular statements to Mr. & Mrs. Roos as described *supra*, and because Seterus did not apply Mr. & Mrs. Roos's payments as they were intended to be applied, Seterus created a fictional default

that the Plaintiffs had fallen behind on their mortgage payments. Seterus concealed from Plaintiffs the necessary information required for it to disclose to them and continued its pattern for the Plaintiffs to simply guess how Seterus was applying their payments each month.

24. On June 30, 2016, Seterus caused its authorized agent BWW Law Group, LLC to issue and send multiple Notices of Intent to Foreclose related to the Plaintiffs. These notices, which were made with the intent that Plaintiffs rely on them, contained the following false and misleading information for the purpose of inducing Plaintiffs to pay additional sums to it:

   a. Each of the Notices indicated that the record owner of the property was "Mary Jo Dorsey Guardian for Donald W. Roos, Sr." This statement was false, misleading and deceptive because Mr. Roos did not have, nor did he need, a guardian; and Plaintiffs were, as they remain, the record owners of the Property.

   b. One of the three Notices of Intent to foreclose was issued to "Mary Jo Dorsey Guardian for Donald W. Roos, Sr," an adversarial third party family member, to whom Plaintiffs had not authorized Seterus to disclose any information;

   c. The Notices claimed that Plaintiffs' last payment had been made on the loan on May 18, 2016, when in fact Plaintiffs had made their last payment on June 15, 2016 and Seterus had retained that payment for its benefit.

25. Panicked at the thought that not only had Seterus not properly applied and accounted for their payments, but also that it intended to foreclose on their home, and mortified that Seterus had apparently notified an adversarial family member that they were behind on payments, Mr. & Mrs. Roos immediately contacted BWW on receipt of the Notices of Intent to foreclose, and spoke with BWW's attorney, Pratima Lele, to inform her of Seterus' above described errors. Unfortunately, although Seterus was provided with sufficient information to correct its escrow

errors and send Plaintiffs regular monthly statements, the only action Seterus and its agents took in response to Plaintiffs' communication with Ms. Lele was to remove Ms. Dorsey's name from the system.

26.     Mr. & Mrs. Roos further relied upon Seterus' Notices of Intent to Foreclose described *supra* by making several additional payments to Seterus to make up for the alleged payments it had not correctly applied (even though Seterus had still not informed Plaintiffs what sums were actually owed).

27.     During the last three years before the commencement of this action, Seterus, through its unlicensed vendor Lereta, has consistently projected the incorrect property tax amount to the Roos' mortgage loan resulting in large overpayments to the Howard County tax office by Lereta and/or Seterus. These overpayments have been refunded inconsistently, with one being sent to Plaintiffs, but others (particularly, a refund for tax year 2015, issued in early 2016) sent to either Lereta or Seterus, and not properly credited back to Plaintiffs' mortgage account in the amount of $586.53.

28.     Despite the Plaintiffs' reasonable reliance as demonstrated by their attempts to contact Seterus to discern why it is miscalculating the property tax payments, Plaintiffs were provided with no reasonable information about Seterus applied payments other than conflicting escrow projection statements, which are materially wrong. Specifically, neither Seterus nor Lereta could reasonable explain (i) why Seterus paid the wrong property tax amount and (ii) why the refund(s) received by Seterus were not sent to them or properly credited to their Plaintiffs' mortgage account. Also, neither Seterus nor Lereta could reasonably explain why Seterus sent the Plaintiffs conflicting mortgage statements and escrow analysis notices.

29.     Plaintiffs contacted Seterus and/or Lereta in numerous telephonic communications to

address the problems with their mortgage account's escrow sums and calculations.   Seterus

represented in each of these communications that it recorded the calls.  A representative sample

of such of these communications include:

   a.   On August 23, 2016 at 3:05PM, Plaintiffs called Seterus and spoke to Hillary for the

        purpose of discussing the property tax credits available to the Plaintiffs by Howard

        County  and  whether  Seterus  would  be  issuing  a  refund  to  the  Plaintiffs  for  its

        overpayment of the actual taxes owed.

   b.   On June 1, 2017, Plaintiffs spoke to Lereta about the excessive sums being held in the

        Plaintiffs' escrow account with Seterus.  Plaintiffs requested another escrow analysis

        to be sent to them after a credit was applied to the escrow account to the Plaintiffs'

        mortgage account with Seterus and Fannie Mae.

   c.   In response to a Seterus correspondence mailed on February 21, 2018 to the Plaintiffs

        in which it intended for them to rely, Plaintiffs called and spoke to Seterus' customer

        service representative for about 47 minutes (beginning about 8:28AM on February 27,

        2018) concerning Seterus' escrow analysis and the proposed increase in the Plaintiffs'

        monthly payments.

30.     Because the Plaintiffs' frustration with Seterus' inability to correctly calculate the actual

sums necessary to pay Plaintiffs' taxes due, Plaintiffs exercised their statutory rights to request

Seterus and Lereta to conduct a reasonable investigation in written correspondence dated April

19,  2018  pursuant  to  12  U.S.C.A.  §  2605  (and  its  implementing  regulations  known  as

Regulation X) and also COM. LAW § 13-316.  Seterus received this correspondence on April

25, 2018 at the address it publishes for such correspondence to mortgage borrowers like the

Plaintiffs.  Lereta also received this correspondence on April 24, 2018 at the address published for it in the public records.

31.    In the April 19, 2018 correspondence to Seterus and Lereta ("QWR I"), Plaintiffs notified them as follows:

    a.    Since "[a]t least since 2015, Seterus has consistently projected the incorrect property tax amount resulting in large overpayments to the Howard County tax office. These have been refunded, but were sent to either Lereta LLC or Seterus, and were not properly credited back to our account…Despite our attempts to contact Seterus to discern why it is miscalculating the property tax payment, we have been provided with no information about how you apply payments other than conflicting escrow projection statements, which are wrong. Please explain (i) why you paid the wrong property tax amount; (ii) why the refund was not sent to us; (iii) who the refund was sent to; and (iv) why the refund was not applied to our account. Also, please explain why you sent us the conflicting documents…which each conflict with each other and confirm you intended for us to rely upon your representations."

    b.    "Seterus has recently sent us three separate escrow projections and accountings for this year, which inaccurately indicate that there is an escrow deficiency on our account, and demand that in addition to our regular escrow payments we also pay hundreds of dollars each month to repay the purported deficiency. Seterus' accountings are inaccurate…As indicated in our summary, there should be a positive balance in our escrow account, due to the positive sum of $2,033.92 which was in our escrow account as of March 2017 by Seterus' own accounting…and our regular escrow payments made from April 2017 through March 2018. Seterus or Lereta, if you contend that there is not a positive

balance in our escrow account, then please explain what you have been doing with the escrow funds we have sent you. If you contend that there was not a positive balance of $2,033.92 in our escrow account as of March 2017, please explain why you sent us a false, misleading and inaccurate statement. If you contend that all three of your newly printed escrow projections from this year contain inaccurate information about the status of our account, please correct these statements and explain why you sent us false, inaccurate and misleading information.  Finally, please explain why you believe you are permitted to hold $2,033.92 in escrow even though that sum is substantially more than the two-month escrow cushion you are permitted to hold in escrow."

c.  "Seterus recently sent us a payoff statement on October 16, 2017, February 20, 2018 and March 9, 2018 itemizing figures required to pay off our loan. For the reasons discussed [above], we believe that the purported 'escrow overdraft' portion of your payoff statements issued on February 20, 2018 and March 9, 2018 are incorrect. Further, if you believe we have missed a payment or incurred late charges or 'unpaid interest,' please provide us with documentation to substantiate that belief. Otherwise, please correct your records and send us a new payoff statement that is accurate."

d.  "Seterus has not sent us any periodic monthly statements despite our repeated requests that it do so. Many of the problems identified above could have been prevented or at least addressed sooner had you simply complied with our request."

e.  "We believe you have not properly credited our account with all of our payments…Specifically, it appears because you have concealed information from us without the right to do so that you have misapplied our payments and demanded escrow sums which were not necessary because we were eligible for and received tax credits

14

on a regular basis and had notified you of those tax credits, which you have ignored. If you believe that you have properly applied our payments…, please provide us with information supporting that belief and your belief that we owed more taxes than the county government was charging us."

f.  "We believe Lereta is not licensed as a Maryland lender. If you believe it is, please provide evidence of that fact."

g.  "If you believe you have not made the errors we have identified above, please provide all documents you reviewed to make that conclusion. In addition to the above inquiries and notices of error, we would also like Seterus to provide a full accounting of our loan, including how you applied our payments and any refunds from state agencies or persons. We would also like copies of all correspondence sent by you concerning our loan."

32.    In response to QWR I, Lereta did not perform any reasonable investigation.   This conclusion is drawn by the fact that Lereta never responded to the Plaintiffs' QWR I but it was required to do so under Federal Law and State Law.

33.    In its May 3, 2018 response to QWR I, Seterus also did not perform any reasonable investigation.   This conclusion is drawn by the following:

a.  Seterus simply disregarded the Plaintiffs' inquiry relating to refunds of overpaid property taxes from Howard County and seemed to have either misunderstood our question or outright ignored it. Plaintiffs are aware that they need to apply for tax credits yearly; they have done so every year, which has resulted in reduced tax amounts owed and refunds when Seterus overpays the actual property taxes due. In response to this inquiry, Seterus sent documents which actually confirm that it did not account for

Plaintiffs' tax credits and assessed them even more for escrow sums than actually due. In addition, Seterus' response also concealed from the Plaintiffs how it accounted for refunds sent to it by Howard County for the overpayment. In sum, Seterus' response to the Plaintiffs' QWR I did not respond to the Plaintiffs' actual questions to it including: (i) why Seterus paid the wrong property tax amount actually due from Plaintiffs (ii) why the refund was not sent to the Plaintiffs; (iii) how it applied the refund paid to it by Howard County to the Plaintiffs' mortgage account; and (iv) when was the refund was applied to Plaintiffs' account.

b.  Seterus also did not explain why it sent to the Plaintiffs conflicting escrow documents which were internally and extrinsically inconsistent and whether or not it intended for Plaintiffs to rely on your statements.

c.  Seterus also did not explain why it performed multiple "annual" escrow analyses within the course of just a few months and why these were, once again, inconsistent with each other.

d.  Seterus did not respond whatsoever to Plaintiffs' inquiry related to the property inspection costs included in its payoff quotes to them and whether Plaintiffs were required to pay for property inspection fees to pay off the loan.

e.  Seterus did not respond whatsoever to Plaintiffs' concern that Seterus' vendor was acting illegally without being licensed by the State of Maryland.  Instead it asserted Plaintiffs were required to investigate this issue themselves which is not what is actually required of Seterus pursuant to 12 U.S.C.A. § 2605 (and its implementing regulations known as Regulation X) and also Com. Law § 13-316.

16

34.   Because Seterus' response to Plaintiffs' QWR I was unreasonable and appeared simply to

further conceal from the Plaintiffs information material to the true facts concerning Plaintiffs'

mortgage loan, Plaintiffs again exercised their statutory rights to request Seterus conduct a

reasonable investigation in written correspondence dated May 30, 2018 pursuant to 12

U.S.C.A. § 2605 (and its implementing regulations known as Regulation X) and also Com.

Law § 13-316.  Seterus received this correspondence on June 4, 2018 at the address it publishes

for such correspondence to mortgage borrowers like the Plaintiffs.   In the May 30, 2018

correspondence to Seterus ("QWR II"), Plaintiffs notified Seterus as follows:

a.   About the errors identified in ¶ 31 *supra*;

b.   That Seterus had finally sent the Plaintiffs a monthly periodic statement, after years of

not doing so, that was received by the Plaintiffs on May 29, 2018 that "raise[d] many

more questions, including the following:"…

   i.   "that [Plaintiffs] need[ed] to pay $58.57 in 'total charges' which are apparently

beyond the scope of principal, interest, and escrow, and which are not late

charges…"

   ii.   "On the first page of the statement [Seterus] stat[ed] that [Plaintiffs] ha[d] been

charged $306.68 for 'charges' since the last statement sent to [them]. However,

the itemized 'Loan Transactions, Fees and Charges Since Last Notice' of the

statement add[ed] up to $440.50…"

c.   That in the QWR I Plaintiffs had "informed [Seterus] that [its] agent Lereta, whom

[it] utilize[s] for mortgage servicing duties, is not licensed in the State of Maryland to

perform such duties. [Seterus] response that [Plaintiffs] are responsible for

investigation of this is not adequate or appropriate. Do[es] [Seterus] contend that [it]

17

may utilize an unlicensed vendor to perform mortgage servicing in the State of Maryland?"

d. Plaintiffs also notified Seterus that based upon its response to them as detailed in the QWR II that Seterus had "not accurately accounted for [their] payments pursuant to the documents governing [their] loan.  Had [it] sent us regular statements over time maybe [Plaintiffs] could have dealt with these issues long ago but [it] did not do so and [it] was required to do so.  [Plaintiffs] do not believe [Seterus] had a right conceal from [them] how it] [was] applying [Plaintiffs''] payments.  COM. LAW § 12-106(c) required [Seterus] to send [Plaintiffs] statements."

35. In its June 25, 2018 response to QWR II, Seterus also did not perform a reasonable investigation.  This conclusion is drawn by the following:

a. Seterus did not account for or explain what happened to the refund sent by Howard County to Seterus related to its overpayment of the actual taxes due from the Plaintiffs on or about January 22, 2016 in the amount of $586.63.  In other words, by its non-response Seterus seems to think may simply keep that sum for its own benefit and not properly credit the Plaintiffs' account or even give the Plaintiffs a refund.

b. Seterus again failed to acknowledge that its vendor Lereta was acting illegally under Maryland law and put the burden on the Plaintiffs to investigate Plaintiffs' inquiry even though Seterus has the burden of such investigation pursuant to 12 U.S.C.A. § 2605 (and its implementing regulations known as Regulation X) and also COM. LAW § 13-316.

c. Seterus never explained in its response why it concealed from the Plaintiffs their monthly, periodic statements as required by COM. LAW § 12-106(c).

18

36.    Plaintiffs sustained damages and losses related to their QWR I and QWR II in the form of legal fees and costs incurred to prepare and mail these to Seterus and Lereta.  In addition, Seterus' responses thereto simply further frustrated the Plaintiffs and caused continued anxiety since Seterus admitted in writing and by its knowing omission that it would continue to violate the laws governing its activities and not reasonably justify its acceptance of Plaintiffs periodic payments and assessment of those payments and overpayments to categories of fees and costs it was not permitted to keep.

37.    As a result of Seterus' utilization of an unlicensed sub-servicer, i.e. Lereta, during the three years before the commencement of this action, Plaintiffs have also sustained damages and losses whereby Seterus has applied substantial portions of Plaintiffs' payments to interest and fees which it is not entitled to collect.  FIN. INST. § 11-523(b).  Plaintiffs' payments should have been applied entirely to the principal portion of their loan.  *Id.*

38.    Because Seterus and its unlicensed agent Lereta failed to pay the appropriate amount of property taxes due, but they collected sums sufficient to pay all property taxes due, Howard County, Maryland notified Plaintiffs in correspondence dated February 28, 2019 that their home and the Property was subject to a tax sale for non-payment of all the 2018 taxes due on the Property.  This notification caused unnecessary stress and anxiety to the Plaintiffs and was caused entirely by Seterus' unfair and deceptive diversion of the Plaintiffs' payments to sums not lawfully owed by Plaintiffs or authorized by the governing documents of the Roos' loan.

39.    On February 11, 2019 Seterus issued to the Plaintiffs a Notice of Servicing Transfer related to their loan subject to these proceedings which represented to the Plaintiffs that effective March 1, 2019 "[t]he servicing of [their] mortgage loan is being transferred…[to] Nationstar." As part of that transfer, Seterus provided through the boarding process to Nationstar incorrect

19

information described herein related to the Plaintiffs' loan and that information unfairly, deceptively, and/or abusively infected the Plaintiffs' ongoing relationship with Nationstar and Fannie Mae.

40.     When it acquired Seterus, Nationstar was aware of the problems Sterus was having to follow basic mortgage servicing principles and practices as evidence in part to the then pending litigation against Seterus across the country including this action.  Further evidence of Seterus' inability to properly service mortgage loans known to Nationstar is also demonstrated in Seterus' settlement agreement that came in response to a multi-state view of its practices (see https://portal.ct.gov/-/media/DOB/Enforcement/Consumer-Credit/2019-CC-Orders/Seterus-Inc-Settlement-Agreement-CO.pdf?la=en).

41.     On March 29, 2019, the Plaintiffs received a statement from Nationstar dated March 22, 2019 to which Nationstar intended the Plaintiffs rely.  This statement disclosed that:

    a.  Nationstar had imposed a property inspection fee onto the Plaintiffs' mortgage account on March 11, 2019.  Nationstar was prohibited from doing so by virtue of its agreement with the Consumer Protection Division in the Office of the Attorney General.

    b.  Nationstar had also imposed a late fee on the Plaintiffs' mortgage account on March 7, 2019 in the amount of $43.57 but it was prohibited as a matter of law from doing so pursuant to 12 U.S.C.A. § 2605(d).

    c.  Nationstar had removed and vacated the imposition of certain inspection fees previously imposed by Seterus onto Plaintiffs' mortgage account in apparent recognition that these fees were not permitted.

42.     On April 27, 2019, the Plaintiffs received a statement from Nationstar dated April 18, 2019 to which Nationstar intended the Plaintiffs rely.  This statement disclosed that:

a. Nationstar still claimed that the Plaintiffs allegedly owed $43.57 in fees and charges on their loan.

b. Nationstar's statement claims these fees and charges "include, but are not limited to, phone pay fees, insufficient fund fees, or convenience fees."  Nationstar had no right to claim these fees and changes since (i) the Roos had not paid Nationstar with "insufficient funds," (ii) Nationstar is not permitted to impose telephone or convenience fees since they are not disclosed on the loan documents governing the relationship between the Plaintiffs and Fannie Mae.  Imposing convenience fees are also barred by Maryland law.  *See* COM. LAW § 14-202(11)(making conduct by collectors like Nationstar that violates the Fair Debt Collection Practices Act including 15 U.S.C.A. § 1692f(1) a violation of Maryland law).

43.   Even though it knew about the issues presented in this action and the unfair and deceptive mortgage servicing of by Seterus of the Plaintiffs' loan before it acquired Seterus which had negatively infected the accuracy of the sums claimed due from the Plaintiffs, Nationstar sent to the Plaintiffs an Escrow Review Statement dated July 11, 2019, in which it intended for the Plaintiffs to rely upon.  This notice was materially inaccurate and otherwise unfair, deceptive, and abusive in several respects including:

a. First, the escrow statement still did not account for the prior escrow sums refunded to Seterus (or Lereta on Seterus' behalf) by Howard County but never given credit to the Plaintiffs' mortgage account as described *supra*:

b. Second, upon information and belief, the statement was prepared by (or in consultation with Lereta who is now Nationstar's agent and Lereta is not properly licensed as a

Maryland mortgage servicer but is required to be so licensed to perform the work it is performing in relation to the Plaintiffs as described herein);

c.  Third, the escrow statement knowingly undercounted the actual taxes that are due on the Property for 2019-2020 by nearly $1,000 and as a result falsely, unfairly, deceptively, and/or abusively misstated or misrepresented to the Plaintiffs, who are on fixed incomes, the actual sums necessary to cover the real property taxes necessary for the Property in the current tax year.  Nationstar and its vendor Lereta knew or should have known about its false, unfair, deceptive, and/or abusive misstatement or misrepresentation in the statement's calculation since Lereta paid the sum of $2,365.81 to Howard County on July 29, 2019 for the property taxes due and not the payment represented on the statement of just $1,743.

44.  Plaintiffs have reasonably relied upon what Nationstar represented in its Escrow Review Statement dated July 11, 2019 as evidenced by their continued payments made based on its representations.  No reasonable person would believe that Nationstar and Lereta would knowingly fail to provide escrow accounting statements which were false and misleading in circumstances such as those described in the proceeding paragraph.

45.  As a result of Seterus' and Nationstar's (as successor to Seterus and in its own right individually) unfair and deceptive acts and omissions in (i) refusing to send Plaintiffs regular statements; (ii) refusing to maintain an accurate account of Plaintiffs' escrow transactions; (iii) threatening to foreclose on Plaintiffs' property when they were current; (iv) appropriation and retention of property tax refunds  owed to the Plaintiffs; and (v) unauthorized assessment of fees to the Plaintiffs' loan, Mr. and Mrs. Roos have suffered mental anguish, emotional distress, anxiety, frustration and worry manifested by irritability, headaches, difficulty

sleeping, embarrassment, and inability to focus on matters other than Seterus and now Nationstar,  due to the Defendants' failure to properly assess escrow dues and failure to accurately apply Plaintiffs' payments to their loan in accordance with the loan's governing documents and the Defendants' threats of foreclosure.

46.     All persons, including licensed mortgage lender/servicers in the State of Maryland like Seterus and Nationstar, are expected to know the law.  Charging and collecting unlawful fees to borrowers' accounts held by Fannie Mae is unreasonable and Seterus and Nationstar should not be permitted retain the profits from such activities.

47.     The Court of Appeals in 2005 recognized that a real estate professional who had no direct communication with a borrower nevertheless had a duty to a consumer under the Maryland Consumer Protection Act and Maryland common law to make a "reasonable investigation" of the true facts in the real estate transaction on which the borrower (and other parties) would rely in order to complete the transaction.  *Hoffman v. Stamper*, 385 Md. 1, 867 A.2d 276 (2005).

48.     Pursuant to 12 U.S.C.A. § 2605(k)(1)(C)(E), Seterus has duties to the Plaintiffs to (i) take appropriate steps to avoid foreclosure as part of its standard servicer's duties and (ii) comply with any other obligation(s) found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of 12 U.S.C.A. § 2605. Pursuant to 12 C.F.R. § 1024.38(b)(1)(i), Seterus is required to "[p]rovide accurate and timely disclosures to a borrower as required by [12 C.F.R. § 1024.38] or other applicable law." Pursuant to 12 C.F.R. § 1024.35(b)(5), Seterus and Nationstar are not permitted to "impos[e]… a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower."  It is unreasonable and a violation of its duties for Seterus or Nationstar to demand inaccurate sums due to Fannie Mae not supported by Maryland and Federal law and the loan's governing

documents and it has no right to collect any sums from the Plaintiffs indirectly through its unlicensed vendor Lereta while not licensed in the form of interest, fees, and expenses.

49.     The Maryland Mortgage Fraud Protection Act, REAL PROP. § 7-401, *et seq.*, establishes a statutory duty upon Nationstar and Seterus to disclose to mortgage borrowers and homeowners, like the material information with respect to the mortgage lending process which includes those fees and costs which it is permitted to charge borrowers. *Ademiluyi v. PennyMac Mortgage Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 531 (D. Md. 2013); *Castle v. Capital One, N.A.*, No. CIV.A. WMN-13-1830, 2014 WL 176790, at *5 (D. Md. Jan. 15, 2014; *Stovall v. SunTrust Mortgage, Inc.*, No. CIV.A. RDB-10-2836, 2011 WL 4402680 (D. Md. Sept. 20, 2011).   In this case, Seterus and Nationstar have duties to disclose to the Plaintiffs that they were barred by Maryland law from imposing fees and sums due onto the Plaintiffs' loan account and pocketing for its own benefit overpayment of property taxes refunded to it by Howard County related to the Plaintiffs' mortgage account to maximize their profits.

50.     Seterus' and Nationstar's knowledge is also represented by the standard and uniform Fannie Mae Deed of Trust securing Fannie Mae's interest in the home and Property of the Plaintiffs which each claims a right to collect on behalf of Fannie Mae, which provides clearly and unambiguously as follows, "Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law."  Deed of Trust at ¶ 14.  The term "Applicable Law" "means all controlling applicable…state…statutes…as well as all applicable final, non-appealable judicial opinions."  *Id.* at ¶ J.

51.     15 U.S.C.A. § 1639g provides: "A creditor or servicer of a home loan shall send an **accurate** payoff balance within a reasonable time, but in no case more than 7 business days, after the receipt of a written request for such balance from or on behalf of the borrower"

24

(emphasis added).  In addition, 12 C.F.R. § 1026.36(c)(3) provides that: "Payoff statements. In connection with a consumer credit transaction secured by a consumer's dwelling, **a creditor, assignee or servicer, as applicable, must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date**. The statement shall be sent within a reasonable time, but in no case more than seven business days, after receiving a written request from the consumer or any person acting on behalf of the consumer. When a creditor, assignee, or servicer, as applicable, is not able to provide the statement within seven business days of such a request because a loan is in bankruptcy or foreclosure, because the loan is a reverse mortgage or shared appreciation mortgage, or because of natural disasters or other similar circumstances, the payoff statement must be provided within a reasonable time" (emphasis added).

52.    By sending the Plaintiffs knowingly inaccurate payoff statements demanding sums not legally due, Seterus acted unlawfully, unfairly, deceptively, and with knowledge that it had no right to those sums claimed due and owing in violation of their duties in 15 U.S.C.A. § 1639g and 12 C.F.R. § 1026.36(c)(3).

**<u>COUNT I</u>**
**MARYLAND CONSUMER DEBT COLLECTION PRACTICES ACT,**
**COM. LAW, § 14-201, *et seq.* ("MCDCA")**
*(On behalf Plaintiffs against all Defendants)*

53.    Plaintiffs incorporate the foregoing allegations.

54.    Defendant Nationstar, individually and as the successor in interest to Seterus, is engaged in the business of collecting consumer debts secured by real property.   Prior to being acquired by Nationstar, Seterus also was also engaged in the business of collecting consumer debts secured by real property.

55.     Fannie Mae is the creditor of Plaintiffs' mortgage loan subject to this action.  It retained and authorized Seterus to act on its behalf as its authorized agent and collector.  Seterus acted within the scope of the authority granted to it and approved by Fannie Mae.

56.     In furtherance of its business activities as a collector, Defendant Nationstar, individually and as the successor in interest to Seterus, and Seterus claimed, directly and indirectly, that each were entitled to assess, charge, and collect from the Plaintiffs sums that were not lawfully owed and it had no right to collect.

57.     In furtherance of its business activities as a collector, Nationstar, individually and as the successor in interest to Seterus, and also Seterus claimed, directly and indirectly, that each were entitled to assess, charge, and collect from the Plaintiffs through an improperly threatened foreclosure created by a fictional default in which it had no right to assert.

58.     Nationstar, individually and as the successor in interest to Seterus, and Seterus  knowingly claimed the right to fees and other sums not due from Plaintiffs since it had retained an unlicensed sub-servicer, i.e. Lereta, which prohibits it from asserting a right to collect any sums other that the principal portion of the Plaintiffs' payments due.  *See e.g.* FIN. INST. § 11-523(b).

59.     Defendant Nationstar, individually and as the successor in interest to Seterus, and Seterus itself act as a debt collector and violated which prohibits a debt collector from making any "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist."

60.     Even though Plaintiffs are only required to allege Seterus' knowledge generally (FED. R. CIV. P. 9(b)), Seterus' knowledge of is violations subject to COM. LAW § 14-202(8) in collecting or attempting to collect upon the Plaintiffs' loan is exemplified by the other wrongs and acts discussed herein (as permitted by FED. R. EVID. 404(b)) and:

a. Seterus' certain legal duties under state and Federal Law which it is aware (*see e.g.* ¶¶ 5-6, 35, 41-42, 47-52 *supra*) but it disregarded those laws.  All persons are expected to know the law and may not disregard it.  Therefore, Seterus' knowledge is demonstrated by its legal duties.

b. Seterus' knowledge that the Plaintiffs had made all the payments due on their mortgage loan and were otherwise current on their loan but it threatened the Plaintiffs with foreclosure or eviction, directly and indirectly through its vendors including BWW and Safeguard, based upon a fictional default.

c. Seterus' knowledge that it had a duty to conduct a reasonable investigation to Plaintiffs' disputes to it under Federal and State law but Seterus but asserted a right to collect from the Plaintiffs any sum it demanded even though, for example, it sought sums subject to those disputes upon which it performed no reasonable investigation and were not owed.

d. Seterus' knowledge as a matter of law it should not assert rights without the right to do so through third parties like Lereta, BWW, or Safeguard, but it did so anyway by engaging each to act on its behalf without the right to do so and in reckless disregard of that knowledge.  For example, Seterus knew the Plaintiffs' property was occupied and had no basis whatsoever to send Safeguard to it to threaten the Plaintiffs with eviction but it was recklessly indifferent to the true facts and consequences to reasonable people like the Plaintiffs finding such a notice pasted to their home under these circumstances.

e. Seterus' knowledge that Lereta was not licensed to conduct mortgage serving activities in Maryland as a matter of public record, but engaged it anyway despite that knowledge to partially sub-service the Plaintiffs' loan on its behalf as described herein.

27

f.  Seterus' knowledge that it had no right to sub-service certain collection activities to an unlicensed mortgage servicer like Lereta in relation to the Plaintiffs, i.e. because acting as a mortgage servicer without a license is a felony, but Seterus did so anyway with knowledge or reckless indifference that it had no such right.

g.  Seterus' knowledge that it had not right to collect or attempt to collect from Mary Jo Dorsey, who had no legal or equitable interest in the Plaintiffs' Property, but it attempted to do so anyway through BWW in reckless disregard to that knowledge and indifference to the privacy concerns of the Plaintiffs with their adversarial family member.

h.  Seterus' knowledge pursuant to the terms of its own license and Maryland law that it had no right to allow Leteta to purportedly borrow its license as mortgage servicer and remain unlicensed itself because the Maryland mortgage license issued to Seterus was only valid to it and only for the address identified in the license.  Seterus knowingly and recklessly disregarded that knowledge and utilized Leteta in contravention of the law without the right to do so.

i.  Seterus's knowledge as a matter of public record and from the Plaintiffs themselves the actual sums due from the Plaintiffs for their annual property taxes but despite that knowledge its continued claims and attempts to assert a right to collect tax sums not due and to retain overpayments paid back to it by Howard County without crediting those refunds to the Plaintiffs' mortgage account.

j.  Seterus' knowledge as a matter of Federal and State law and the loan documents governing the Plaintiffs' loan that it was required to accurately apply the Plaintiffs'

28

payments and to provide monthly or periodic statements, but it recklessly failed to do so for long periods of time described herein (until about May 29, 2018).

k.  Seterus' knowledge pursuant to its contract with Fannie Mae and the Fannie Mae guidelines governing its work on Fannie Mae's behalf in relation to the Plaintiffs, that it was required to accurately account for all payments to the Plaintiffs' mortgage loan and for it to comply with all Federal and State laws, but it recklessly failed to do as described herein.

l.  Seterus' knowledge at the time of the servicing transfer of the Plaintiffs' loan to Nationstar that its acts and omissions had wrongfully infected the accuracy of the records it was transferring to Nationstar, but with that knowledge it transferred the inaccurate records to Nationstar anyway in reckless disregard and indifference to what would become of the Plaintiffs.

m.  Seterus' knowledge at the time it sent the Plaintiffs certain payoff statements that the statements were required to be accurate but it knowingly sent payment statements claiming sums not lawfully due.

n.  Seterus' knowledge that it was not entitled to impose and collect escrow related sums from the Plaintiffs in relation to their mortgage loan not authorized by the loan documents and Federal and State laws but it regularly asserted such a right by materially overstating sums claimed due beyond what it was permitted to demand as demonstrated by the overpayments made by it and Lereta on its behalf to Howard County and its failure to properly credit the Plaintiffs' mortgage account with all refund sums its received (thereby pocketing those sums for its use and not for the benefit of the Plaintiffs as required by the loan documents and governing laws).

o.  Seterus' knowledge that if it failed to pay the correct sum of taxes due in relation to the Plaintiffs' property that that the Plaintiffs' property would be subject to tax sale, but despite that knowledge it failed to pay the correct sum due for the 2018 taxes and Plaintiffs were threatened with tax sale of their home and property in 2019 as a result.

61.  In relation to its transfer to Nationstar of its infected and incorrect mortgage data related to the Plaintiffs mortgage loan that it was collecting or attempting to collect, Seterus also violated COM. LAW § 14-202(11) which makes conduct by collectors like Seterus in violation of the Fair Debt Collection Practices Act, including 15 U.S.C.A. § 1692f, a violation of Maryland law.

62.  Even though Plaintiffs are only required to allege Nationstar's knowledge generally (FED. R. CIV. P. 9(b)), Nationstar's knowledge of is violations subject to COM. LAW § 14-202(8) in collecting or attempting to collect upon the Plaintiffs' loan is exemplified by the other wrongs and acts discussed herein (as permitted by FED. R. EVID. 404(b)) and:

a.  Nationstar's knowledge of certain of its legal duties under state and Federal Law which it is aware (*see e.g.* ¶¶ 41-42, 47-50 *supra*) but it disregarded.  All persons are expected to know the law and may not disregard it.  Therefore, Nationstar's knowledge is demonstrated by its legal duties.

b.  Nationstar's knowledge that it entered into a contract with the Consumer Protection Division (ECF 5-2) where it agreed not to impose property inspection fees from borrowers.  With that knowledge it so imposed a fee from the Plaintiffs in its March 11, 2019 statement to them.

c.  Nationstar's knowledge that it was prohibited from imposing a late fee onto the Plaintiffs' mortgage account in the first sixty days it was acting the mortgage servicer pursuant to 12 U.S.C.A § 2605(d) but it did so anyway.

d.  Nationstar's knowledge that it had no right to sub-service certain collection activities to an unlicensed mortgage servicer like Lereta in relation to the Plaintiffs, i.e. because acting as a mortgage servicer without a license is a felony, but Nationstar has done so anyway with knowledge or reckless indifference that it had no such right.

e.  Nationstar knowledge that it had no right to allow Leteta to borrow its license as mortgage service license and remain unlicensed itself because the Maryland, mortgage license(s) issued to Nationstar are was only valid to it and only for the address(es) identified in the license.  Nationstar knowingly and recklessly disregarded that knowledge and utilized Leteta in contravention of the law without the right to do so.

f.  Nationstar's knowledge as a matter of public record the actual sums due from the Plaintiffs for their annual property taxes but despite that knowledge asserted the right to collect tax sums far less which will cause a serious underpayment to Howard County and potential default of the loan not caused by the Plaintiffs but by Nationstar's and Lereta's inability to accurately conduct an annual escrow accounting.

g.  Nationstar's knowledge pursuant to its contract with Fannie Mae and the Fannie Mae guidelines governing its work on Fannie Mae's behalf in relation to the Plaintiffs, that it is required to accurately account for all payments to the Plaintiffs' mortgage loan and for it to comply with all Federal and State laws, but it has recklessly failed to do so as described herein since acquiring the servicing right to the Plaintiffs' loan.

31

h.  Nationstar's knowledge at the time of the servicing transfer of the Plaintiffs' loan to it from Seterus that Seterus' acts and omissions had wrongfully infected the accuracy of the records it was transferring to Nationstar, but with that knowledge it received inaccurate records, Nationstar has recklessly adopted those records into its own systems and continued pattern begun by Seterus.

63.  In relation to certain convenience fees it apparently claims the Plaintiffs owe on their mortgage loan as evidenced in its statements to them, Nationstar also violated COM. LAW § 14-202(11) which makes conduct by collectors like Nationstar in violation of the Fair Debt Collection Practices Act including 15 U.S.C.A. § 1692f(1) a violation of Maryland law.

64. The demands by Nationstar, individually and as the successor in interest to Seterus, and also Seterus itself for the improper fees and loan sums not actually due based upon Seterus's fictional default related to Plaintiffs' mortgage loan secured by real property concern "real or personal property, services, money, or credit for personal, family, or household purposes." COM. LAW § 201(b).

65.  The acts and omissions of Nationstar, individually and as the successor in interest to Seterus, and Seterus itself individually in violation of the MCDCA also constitute a *per se* violation of the MCPA pursuant to COM. LAW § 13-301(14)(iii).

66.  Plaintiffs have pled this claim with sufficient particularity since the Amended Complaint identifies material details including but not limited to (i) dates (*see e.g.* ¶¶ 9, 17, 19-20, 24, 29-31, 33-35, and 39-44), (ii) methods or means of communication (*see e.g.* ¶¶ 20-21, 29, 31, 33, and 24), (iii) specific persons involved throughout the disputed activities (*see e.g.* ¶¶ 20-21, 24-25, 27, 29, 37-38, 41, and 44), (iv) specific documents and contexts  involved (*see e.g.* ¶¶

16-19, 24, 31, 33, 35, 39-42), (v) the regulatory and statutory duties of the Defendants (*see e.g.* ¶¶ 5-6, 35, 41-42, 47-52).

67.   Plaintiffs have been damaged as described *supra*.

**COUNT II**
**VIOLATION MARYLAND'S CONSUMER PROTECTION ACT ("MCPA"),**
**COM. LAW § 13-101 *et seq.***
*(On behalf Plaintiffs against all Defendants)*

68.   Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

69.   The mortgage loan servicing practices described herein of Nationstar, individually and as the successor in interest to Seterus, and also to Seterus individually as set forth herein, are governed by the Consumer Protection Act, MD. CODE ANN., COM. LAW. § 13-101, *et seq*. Specifically, Plaintiffs' MCPA claims are brought pursuant to COM. LAW. § 13-301(1) & (3).

70.   In addition, COM. LAW. § 13-303 prohibits unfair or deceptive trade practices in the extension of consumer credit or collection of consumer debts. The mortgage servicing of Plaintiffs' Loan serviced by Nationstar, individually and as the successor in interest to Seterus, and also Seterus individually, and the threatened foreclosure and other acts and omissions related to their debt collection practices involves both the extension of credit and the collection of debts.

71.   COM. LAW. § 13-303 also prohibits unfair or deceptive trade practices in the sale or provision of consumer services, such as those provided by Nationstar, individually and as the successor in interest to Seterus and Seterus individually.

72.   The Maryland Consumer Protection Act defines unfair or deceptive trade practices to include, inter alia, the following: (a) False, falsely disparaging, or misleading oral or written statement, visual description or other representation of any kind which has the capacity, tendency or effect of deceiving or misleading consumers; and (b) Failure to state a material

fact if the failure deceives or tends to deceive.  COM. LAW §13-301(1) and (3).

73.     The acts and omissions described herein by Nationstar's, individually and as the successor in interest to Seterus, and also Seterus individually subject to this claims include but are not limited to (i) failing to timely and accurately respond to Plaintiffs' lawful efforts to mitigate their situation, (ii) seeking and demanding sums not legally or contractually due from Plaintiffs or giving them credit for payments made on the Plaintiffs' Loan, (iii) initiating foreclosure activity and referring them to foreclosure before it had a right to do so pursuant to state and Federal Law, (iv) failing to conduct any reasonable investigation of Plaintiffs' disputes whatsoever, and (v) failing to properly administer Plaintiffs' escrow accounts to collect the sums actually due and owing and also by using an unlicensed sub-servicer—i.e. Lereta--constitute unfair and deceptive trade practices in violation of COM. LAW §§13-301(1)(3) and COM. LAW §§13-303(4)(5).

74.     Alternatively, the deception, fraud, false premise, misrepresentations, and knowing concealment and omission of material facts from Plaintiffs, pursuant to FED. R. CIV. P. 8(d)(2), by Nationstar (individually and as the successor in interest to Seterus) and Seterus, with the intent that they rely upon the same during the servicing of their loan and related consumer services as described herein, also violated COM. LAW § 13-301(9).  Specific facts identifying the particulars of this alternative claim under the MCPA are exemplified *supra (see e.g.* ¶ 66).

75.     Plaintiffs have been unfairly damaged by the Defendants' utilization of an unlicensed mortgage sub-servicer—i.e. Lereta—which is not permitted under Maryland law.  FIN. INST. § 11-504.  As a result, Plaintiffs' payments should have been applied only to the principal owed on their loan and the Defendants were not permitted to apply the payments to interest and costs. FIN. INST. § 11-523(b).  The difference in how the Defendants' unfairly and deceptively applied

34

the payments is no less than $10,000 which should have been applied to the Plaintiffs' principal balance but was not in the three years before the commencement of this action through this filing.

76.     Plaintiffs reasonably relied upon the material acts and actions of Seterus and Nationstar, individually and as the successor in interest to Seterus, as exemplified *supra*.  As demonstrated herein (i) they continued to pay Seterus and Nationstar in response to and in reliance to its demands that they do so and in reliance to the terms and conditions of their mortgage documents, (ii) they frequently communicated with Seterus's authorized representatives about their mortgage and the application of their payments to their loan and escrow account in response to and in reliance to its requests that they do so, (iii) they notified it of its errors in reliance to and in response to its continued false and deceptive threats and failure to properly credit their payments, and (iv) they engaged costs and expenses to attempt to mitigate the situation but Seterus simply disregarded those efforts.  Seterus's acts and omissions are simply unreasonable, unfair, and deceptive—even those acts after this action commenced which demonstrate it simply wishes to avoid any review of its improper mortgage servicing practices.

77.     To compound matters, Nationstar, individually and as the successor in interest to Seterus, and also Seterus also retained unlicensed vendors who infected the true facts related to the Plaintiffs' mortgage loan to miscalculate the proper escrow sums that were due from the Plaintiffs.

78.     Had Nationstar, individually and as the successor in interest to Seterus, and Seterus itself not acted unfairly and deceptively, Plaintiffs would not have suffered the damages and losses they have described *supra.*

## COUNT III: VIOLATION OF THE MARYLAND MORTGAGE FRAUD PROTECTION ACT,
### REAL PROP. §§ 7-401, *et seq.*
*(On behalf Plaintiffs against all Defendants)*

79.  Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

80.  The Maryland Mortgage Fraud Protection Act ("MMFPA"), REAL PROP. § 7-401*, et. seq.*, governs the relationship between Plaintiffs and Nationstar, individually and as the successor in interest to Seterus and also Seterus.

81.  REAL PROP. § 7-401(c) provides: "Homeowner" means a record owner of residential real property. The Plaintiffs are the record owner of the Property in question and are therefore Homeowners entitled to the protections of the MMFPA.

82.  REAL PROP. § 7-401(e) provides: "Mortgage lending process… include[s] [t]he solicitation, application, origination, negotiation, servicing, underwriting, signing, closing, and funding of a mortgage loan."

83.  The MMFPA works to protect the interests of all parties to mortgage transactions in Maryland from misstatements, misrepresentations and omissions. In this instance, the MMFPA works to protect borrowers like Plaintiffs from so-called professionals like Seterus to ensure a level, fair playing field between all borrowers and professionals.  For example, other mortgage professionals who followed the duties and responsibilities described herein are harmed by Seterus' violations and false statements and omissions made herein just as the Plaintiffs are harmed.

84.  Plaintiffs are homeowners in the Mortgage Lending Process as defined by the MMFPA since the actions in dispute in this lawsuit involve the negotiation and servicing of the Loan.

85.  REAL PROP. § 7-401(d) provides: "Mortgage fraud" means any action by a person made

with the intent to defraud that involves:

- (1) Knowingly making any deliberate misstatement, misrepresentation or omission during the mortgage lending process with the intent that the misstatement, misrepresentation or omission be relied on by a mortgage lender, borrower or any other party to the mortgage lending process;

- (2)  Knowingly using or facilitating the use of any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process.

- (3)  Receiving any proceeds or any other funds in connection with a mortgage closing that the person knows resulted from a violation of item (1) or (2) of this section;

- (4) Conspiring to violate any provisions of item (1), (2), or (3) of this section…

86.  Nationstar's, individually and as the successor in interest to Seterus, and Seterus' knowing

conduct and intention to defraud Plaintiffs is demonstrated by its: dishonest statements and

omissions and willful refusal to know the true facts.  Specific facts identifying the particulars

of this alternative claim under the MCPA are exemplified *supra (see e.g.* ¶ 66).

87.  Nationstar's, individually and as the successor in interest to Seterus, and Seterus' intent to

defraud and otherwise deceive Plaintiffs is also exemplified in ¶¶ 2-6, 9-11, 22, 25-34, 36-38,

42, 44, 47-49 *supra*.  The Maryland Court of Appeals has also defined intent to defraud in

another context to include facts demonstrating bad faith by the defendant, acts of dishonesty

(¶¶ 3, 22,-23, 27 *supra*) or reckless indifference (¶¶ 3, 5-6, 19, 37-39 *supra*), deliberate

disregard of the consequences (¶¶ 20-21,24-25, 41 *supra*), and a willful refusal to know the

truth (¶¶ 29-35 *supra*). *Ferguson Trenching Co., Inc. v. Kiehne*, 329 Md. 169, 184-85, 618

A.2d 735, 742-43 (1993).

88.     The Defendants as described herein have violated REAL PROP. § 7-401(d)(1)-(4).  Seterus

and Nationstar have each conspired with Lereta to violate § 7-401(d)(1), (2), and/or (3).

89.     As a result of Seterus' and Nationstar's (as the successor to Seterus) knowingly deceptive

and untrue communications and misstatements and omissions and acts and omissions,

Plaintiffs have suffered economic and noneconomic damages described *supra*.

**COUNT IV**
**VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT**
**("RESPA"), 12 U.S.C.A. § 2605, 12 C.F.R. § 1024.36, and**
**12  C.F.R. § 1024.35**
**(On behalf Plaintiffs against Nationstar, as the**
**successor in interest to Seterus, and Seterus)**

90.     Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

91.     Nationstar, as the successor in interest to Seterus, and Seterus had duty of care under 12

U.S.C.A. § 2605, 12 C.F.R. § 1024.36, and 12 C.F.R. § 1024.35 to acknowledge in writing

Plaintiffs' QWRs (including notices of error and requests for information)  within five days

and to respond to the QWRs in writing within 30 days (unless it seeks an extension of not more

than 15 days).

92.     Plaintiffs' QWRs described herein (*see e.g.* ¶¶ 31, 34) were sent to the address published

by Seterus for such communications and Seterus received each.

93.     Nationstar, as the successor in interest to Seterus, and Seterus  also had duty of care under

12 C.F.R. § 1024.36 and 12 C.F.R. § 1024.35 to conduct a reasonable investigation of

Plaintiffs' QWRs and it failed to do any reasonable investigation as demonstrated *supra* and

including its: (i) failure to provide the information sought in the QWRs; (ii) lack of

communication with Lereta about the nature of the information it received from Lereta and

from the Howard County tax authorities which is demonstrated herein, and (iii) its pattern of

38

making claims in writing and on the telephone to Plaintiffs (which it intended for them to rely upon) by its authorized representatives which it knew were false and misleading.

94.     As a direct and proximate result of these violations Plaintiffs are entitled to their actual damages pursuant to 12 U.S.C.A. § 2605(f)(2)(A) described *supra*.

## COUNT V
### DECLARATORY JUDGMENT

**(On behalf Plaintiffs against Nationstar, individually and as the successor in interest to Seterus and Seterus)**

95.     Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

96.     Plaintiffs seek a declaration of law that Nationstar currently and/or Seterus previously was not permitted to engage Lereta to provide mortgage servicing activities on its behalf in relation to the Plaintiffs while it was unlicensed as a Maryland mortgage lender.

97.     Plaintiffs also seek a declaration that Orders and Declares that all sums paid by Plaintiffs in the three years preceding the commencement of this action until such time that Nationstar either fires Lereta or Lereta becomes licensed as a Maryland licensed mortgage shall be applied to the principal balance due on the Plaintiffs' Loan and the Defendants were not entitled to collect interest and fees from the Plaintiffs who had engaged an unlicensed vendor, i.e. Lereta, to partially service Plaintiffs' Loan.

98.     A controversy exists between the Defendants and the Plaintiffs concerning the Defendants' knowing utilization of an unlicensed vendor to sub-service a portion of Plaintiffs' loan in violation of Maryland law and that sub-servicer has botched the servicing of Plaintiffs' loan. Defendants believe they may retain unlicensed vendors to perform mortgage servicing on their behalf but Maryland law suggests otherwise. FIN. INST. § 11-504 ("A person may not act as a

mortgage lender unless the person is: (1) A licensee; or (2) A person exempted from licensing under this subtitle").  Lereta is not exempt from the licensing requirements under Maryland law.

99.     A controversy exists between the parties as to these issues concerning the interest, fees, and costs claimed due by Nationstar, individually and as the successor in interest to Seterus, and the controversy needs to be resolved.

## PRAYER FOR RELIEF

A.  WHEREFORE, Mr. & Mrs. Roos respectfully request the Court enter a money judgment pursuant to Counts I to IV under the MCDCA, MCPA, MMFPA, and RESPA and Regulation X in their favor and against Defendant Nationstar, individually and as the successor in interest to Seterus, and Seterus in a sum in excess of $75,000 for actual damages and losses, attorneys' fees and costs, and grant Mr. & Mrs. Roos such other and further relief as this court finds necessary and proper.

B.  WHEREFORE, Mr. & Mrs. Roos respectfully entry of the following declaratory judgments against the Defendants pursuant to Count V of their Complaint in their favor and against Defendant Nationstar which Orders and Declares that as a matter of law (i.e. FIN. INST. § 11-523(b) and Maryland common law) that Nationstar, nor Seterus, was not entitled to any interest, fees or costs related to Mr. & Mrs. Roos' loan collected in the last three years before the commencement of this action and until their either stop using Lereta or Lereta becomes licensed as a Maryland mortgage lender and all such sums collected and applied by the Defendants shall be applied instead to the principal portion of the Plaintiffs' Loan.

Respectfully Submitted,
//s//Phillip R. Robinson_____
Phillip R. Robinson
Bar No. 27824
Consumer Law Center LLC
8737 Colesville Road, Suite 308
Silver Spring, MD  20910
Phone (301) 448-1304
Email: phillip@marylandconsumer.com
*Counsel for the Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served upon all parties and counsel for the

Defendants when filed with the Court's CM/ECF System.

_//s//Phillip R. Robinson_____
Phillip R. Robinson